**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MICHAEL and CATHERINE BURKE,<br><br>*Plaintiffs*,<br><br>v.<br><br>KATE WALSH, in her official capacity as Secretary of the Massachusetts Executive Office of Health and Human Services, *et al*.<br><br>*Defendants*. | Civil Action<br>No. 3:23-cv-11798-MGM<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO REQUEST FOR ENLARGMENT OF TIME TO RESPOND TO OFFICIAL-CAPACITY CLAIMS** |

## MEMORANDUM IN OPPOSITION TO REQUEST FOR ENLARGEMENT OF TIME

## BACKGROUND

Plaintiffs filed their complaint nearly four months ago. Defendants previously requested, and were granted, two extensions of time to respond to the Burkes' complaint. *See* Dkts. 53, 55, 56, 57. With these extensions, Defendants' response was due on November 7, 2023—three months after the Burkes filed their complaint.

Shortly before that deadline, Defendants asked for consent to an extension similar to the one they are now requesting.[1] Plaintiffs asked how discovery could proceed if Defendants did not answer the complaint. Defendants did not provide a response. Plaintiffs declined to consent to the extension. Rather than file another opposed motion for an extension, Defendants chose not to ask for permission. When the November 7 deadline arrived, personal capacity Defendants filed a partial motion to dismiss, but no Defendant filed an answer to the complaint. None of the official capacity defendants filed any response to the complaint. Nor did any Defendant file a proper motion to extend the time in which to file an answer to the complaint. Instead, Defendants declared

[1] Although Defendants style their present request as a response to Plaintiffs' application for default, it couches an untimely motion for an extension of time to answer the complaint. Plaintiffs therefore treat Defendants' response as such a motion.

in a footnote to their partial motion to dismiss that they should not have to file an answer yet and assumed (without a response from this Court) that their obligation under the Federal Rules would be waived away. Dkt. 59 at 2 n.1. Notably, in the case Defendants relied upon in that footnote, the court cautioned the defendants that "failing to file an appropriate motion for extension of time and ignoring deadlines will not be considered favorably." *Alston v. Sharpe*, No. 3:13-cv-1, 2015 WL 4715340, at *2 (D. Conn. Aug. 7, 2015).

On Friday, December 1, Plaintiffs informed Defendants that they had reviewed their footnote in the course of preparing their opposition brief and concluded that all official capacity defendants were in default.[2] Plaintiffs informed defendants that, unless an answer was filed by December 4, Plaintiffs would apply for default. Defendants once again sought consent for an extension of time until qualified immunity is resolved, and Plaintiffs once again declined. On December 5, Plaintiffs filed an application for default. In response, Defendants filed their overdue request for an extension of time.[3]

**ARGUMENT**

The First Circuit has warned against granting motions like this one. Defendant's motion would act as a stay of discovery on all Plaintiffs' claims. Without an answer laying out defenses, Plaintiffs cannot effectively conduct discovery to test those defenses. In similar cases involving both official

[2] "[T]he filing of a Rule 12(b) motion by one defendant does not automatically extend the period within which a codefendant may answer." 5B Wright & Miller, *Federal Practice and Procedure* § 1346 (3d ed. 2023); *accord Hanley v. Volpe*, 48 F.R.D. 387, 388 (E.D. Wis. 1970) (a motion "by one defendant" does not "relieve the [other defendants] from their obligation to file an answer"—even if all defendants are represented by the same counsel). Defendants who fail to respond to a complaint because of a codefendant's motion to dismiss "stand in default for their failure to have submitted an answer within the time required by the rules" and should, at the very least, be required to file an answer in a timely manner. *Hanley*, 48 F.R.D. at 388 (requiring answer within ten days); *see also Snyder v. Jefferson Cnty. Sheriff's Dep't*, No. 4:22-cv-3093, 2022 WL 2818469, at *1 (D. Neb. July 19, 2022) (requiring answer within thirteen days); *Austin v. Onward, LLC*, No. 3:14-cv-350, 2015 WL 12940029, at *2 n.1 (S.D. Tex. Apr. 2, 2015) (requiring answer within five days).

[3] Even now, Defendants have taken an indirect route to make their third request for an extension of time. Rather than file a proper motion, Defendants have made their request for an extension of time in an unusual response to an application for default.

and personal capacity claims, the First Circuit has warned that "[t]here are powerful policy reasons why discovery should not be halted." *Lugo v. Alvarado*, 819 F.2d 5, 7 (1st Cir. 1987).

This is so for three reasons. First, where official and personal capacity claims are raised, "[r]egardless of what happens to the damage claim in this case, the equitable requests stand on a different footing." *Id.* Thus, a delay of all proceedings "only delays the case unnecessarily, because sooner or later the parties will have the right to engage in discovery as to the equitable claims, irrespective of whether there is a surviving damage action." *Id.* This is particularly true here, where all personal capacity defendants are also sued in their official capacities. Moreover, since Defendants failed to even make qualified immunity arguments as to several of Plaintiffs' claims, even some personal capacity claims will have to go forward in some fashion. *See* Opp. to Mot. at 8-9, Dkt. 65. For this reason, "[m]ost courts confronting cases raising both individual and official capacity claims have denied broad requests to stay all discovery on the basis that the individual capacity claim may be subject to qualified immunity." *Drewniak v. U.S. Customs & Border Prot.*, 563 F. Supp. 3d 1, 5 (D.N.H. 2021).[4]

Second, "any elimination of 'disruptive' discovery against government officials in a civil rights suit in which both damage and equitable relief are sought would be totally illusory, because in most cases the scope of discovery as to the injunctive claim is practically the same as that involved in proving damages." *Lugo*, 819 F.2d at 7. Here, the facts necessary to prove the Burkes' personal-

---

4 *See, e.g.*, *Roth v. Pres. & Bd. of Trs. of Ohio Univ.*, No. 2:08-cv-1173, 2009 WL 2579388, at *3 (S.D. Ohio Aug. 18, 2009) ("Most courts faced with this issue have ruled in favor of allowing discovery to proceed on the claims to which qualified immunity does not apply."); *Rome v. Romero*, 225 F.R.D. 640, 644-45 (D. Colo. 2004) (permitting discovery that "relate[d] directly to the specific conduct underlying the claims and the defense of immunity" and that related to defendants who did not have qualified immunity defense); *Devers v. Mooney*, No. 3:12-cv-700, 2013 WL 3821759, at *3 (W.D. Ky. July 23, 2013) ("[D]iscovery on the official capacity claims would still have to be conducted even if the individual capacity claims were dismissed. … Staying discovery on the official capacity would therefore have the sole effect of unnecessarily delaying resolution of those claims."); *Cruz v. City of Deming*, No. 2:22-cv-957, 2023 WL 5319254, at *8 (D.N.M. Aug. 18, 2023) ("[O]ne official's mere assertion of qualified immunity *does not* obligate the district court to impose a global stay of the entire case, including as to defendants and claims where qualified immunity is inapplicable.").

capacity claims are largely, if not entirely, the same as those needed to prove their official-capacity claims. Whether in official or personal capacity, Plaintiffs will need discovery into how DCF applies its policies, why Defendants denied the Burkes' license, and whether they acted with overt religious discrimination in doing so. The parties will therefore need to engage in the same discovery regardless of whether the personal-capacity claims against some Defendants are dismissed. Allowing Defendants to avoid answering the complaint until the motion to dismiss has been decided only delays that inevitable discovery.

It will be more efficient, and more consistent with the Federal Rules, to require Defendants to answer the complaint now. Although all twelve Defendants were sued in their official capacities, only the ten Defendants who were also sued in their personal capacities moved to dismiss some of the claims against them in their personal capacities. No Defendant has moved to dismiss any of the claims against them in their official capacities. And some of the personal capacity claims will move forward regardless, since Defendants failed to offer arguments on those claims. Thus, whatever the outcome of the partial motion to dismiss, all of the Burkes' claims will proceed against official capacity defendants, and at least some personal capacity claims will proceed, as well.

Third, the burden of establishing the need for a stay is on the party requesting it. *Drewniak*, 563 F. Supp. 3d at 3 (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)). And with stays for qualified immunity, defendants must state not merely that qualified immunity was raised, but the precise reasons why it should necessitate a stay. Defendants have failed to do so.

Plaintiffs have waited nearly four months to receive an answer to their allegations and be advised of the defenses so that they may proceed with discovery. Defendants have abused the Court's process and shown no entitlement to an extraordinary delay. Defendants do not even provide a satisfactory reason for such a delay. There will not be duplicative or piecemeal litigation, as Defendants suggest, because *all* Defendants will need to answer the complaint in full. And *all* Defendants will need to engage in the same discovery regardless of the disposition of the personal capacity claims. The unnecessary delay caused by granting Defendants'

requested extension only prejudices the Burkes, who can neither proceed with the discovery they are entitled to nor test Defendants' legal defenses because Defendants have failed to answer the complaint.

The Burkes have already experienced unconstitutional religious discrimination as a result of Defendants' actions and have been penalized for their exercise of First Amendment rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). Therefore "discovery should be carried out sooner rather than later, particularly where, as here, there are claims of irreparable injury." *Lugo*, 819 F.2d at 7.

**CONCLUSION**

The Court should recognize that the official-capacity Defendants are in default and deny Defendants' request for an extension of time.

Dated: December 6, 2023

Respectfully submitted,

/s/ Michael Gilleran
Michael Gilleran
BBO No. 192210
Fisher Broyles, LLP
75 State Street
Suite 100
Boston, MA 02109
(781) 489-5680

/s/ Lori Windham
Lori Windham
DC Bar No. 501838
William J. Haun
DC Bar No. 1024405
Benjamin Fleshman
DC Bar No. 1781280
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave, N.W. Suite 400
Washington, DC 20006
(202) 955-0095
*lwindham@becketlaw.org*

**CERTIFICATE OF SERVICE**

I certify that this document, filed through the Court's ECF system on December 6, 2023, will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Lori Windham
Lori Windham