UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL and CATHERINE BURKE,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>KATE WALSH, in her official capacity as Secretary of the Massachusetts Executive Office of Health and Human Services, *et al*.<br><br>　　　　　　　　　　Defendants. | CIVIL ACTION<br>No. 3:23-cv-11798-MGM |

**DEFENDANTS' REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS**
**LEAVE TO FILE GRANTED ON JAN. 18, 2024 (ECF NO. 75)**

　　The defendants respectfully submit this reply in support of their motion to dismiss (ECF No. 59) and in reply to plaintiffs' response (ECF No. 65).[1] As explained more fully below, plaintiffs have not identified any specific factual allegations that support their demand for money damages from the nine state employees who formed their Licensing Review Team ("LRT"); nor have they identified any controlling authority that would have put those employees on clear notice that the LRT's decision to deny plaintiffs' application to serve as foster parents was unconstitutional. Accordingly, this Court should dismiss plaintiffs' individual capacity claims against the LRT members and permit only their official capacity claims for declaratory and injunctive relief to proceed.

---

[1] Defendants' partial motion and supporting memorandum (ECF No. 60) are cited herein as "Def. Mot." and "Def. Memo.," respectively. Plaintiffs' response is cited "Pl. Resp."

I. **PLAINTIFFS DO NOT POINT TO ANY PARTICULARIZED ALLEGATIONS IN THE COMPLAINT THAT WOULD GIVE RISE TO INDIVIDUAL LIABILITY AGAINST THE NINE LRT MEMBERS, AND NONE EXIST.**[2]

In their response, plaintiffs assert that they have adequately pleaded the personal involvement of the nine LRT members, yet they fail to identify any factual allegations plausibly suggesting that any of those defendants' own acts or omissions—as opposed to the collective decision of the LRT itself—resulted in the deprivation of rights alleged in the Complaint. *See, e.g., Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) (public officials sued individually under 42 U.S.C. § 1983 may be found liable only "on the basis of their own acts or omissions"). Nor could they. Of the 211 paragraphs of the Complaint, only 11 concern the individually named defendants. One of those paragraphs simply identifies them as LRT members. Verified Complaint (ECF No. 6) ("Compl.") ¶ 134. The other ten baldly assert that, in their role as LRT members, each of the individually named defendants was "directly involved" or "personally and directly involved" in the licensing decision underlying this action. *Id.* ¶¶ 24-32 & ¶ 135. But those allegations are nothing more than conclusory statements, unsupported by *any* specific facts about each defendant's conduct—much less the type of particularized facts necessary to sustain a claim for individual liability under 42 U.S.C. § 1983. *Compare Sanchez*, 590 F.3d at 50 & n. 11 (denying motion to dismiss 42 U.S.C. § 1983 claim against defendant sergeant where complaint contained specific facts about his involvement in an allegedly unlawful search conducted by multiple correctional officers). The Court must disregard them. *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (on Rule 12(b)(6)

---

[2] Plaintiffs agree that their individual capacity claim against Laurie Sullivan should be dismissed. Pl. Resp. at 6 n.3. The remaining individually named defendants are: Anna Moynahan, Theresa Harris, Dawn Sweetman, Tywanna Jones, Caitlynn Levine, Euphemia Molina, Stacy Clark, Luz Estrada, and Angel Emerson.

review, court "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels or conclusions or merely rehash cause-of-action elements" and determines whether the remainder of complaint narrates a plausible claim for relief).[3]

Presumably because they failed to plead any particularized allegations about the individually named defendants, plaintiffs focus their efforts on the group pleading standard. Here too, their response falls flat. None of the cases they cite on group pleading involves a § 1983 individual capacity claim, so the deciding courts were not called to consider whether the plaintiffs had adequately alleged that an individual state official, "through [his or her] own individual actions, ha[d] violated the Constitution," *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). *See Rodriguez-Rivera v. Allscripts Healthcare Sols.*, 43 F.4th 150 (1st Cir. 2022); *Zond v. Fujitsu Semiconductor*, 990 F. Supp. 2d 50 (D. Mass. 2012); *Cota v. U.S. Bank Nat'l Ass'n*, No. 15-cv-486, 2016 WL 922784 (D. Me. Mar. 10, 2016), all cited at Pl. Resp. at 6-7. That is not to suggest that a heightened pleading standard applies to civil rights cases, only that even in the group pleading context, the complaint "should at least set forth minimal facts as to who did what to whom, when, where, and why." *Educadores Puertorriqueños en Acción v. Hernández* ("*Hernandez*"), 367 F.3d 61, 68 (1st Cir. 2004); *accord Sanchez*, 590 F.3d at 49-50.  The complaint utterly fails to do this as to the individual capacity claims.

While this Court must take all well-pleaded allegations contained in the Complaint as true, and draw all reasonable references from those allegations in plaintiffs' favor, it may not assume that plaintiffs "can prove facts that [they have] not alleged or that the defendants have

---

[3] And, "some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595 (1st Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 n.5 (2007)).

violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). Plaintiffs ask the Court to make just that assumption and to allow them to pursue the individual LRT members for monetary damages based on a few paltry (and redundant) allegations about their involvement in a collective decision—made on behalf of the Department—that plaintiffs believe to be discriminatory.[4] For the reasons set forth herein, and in the defendants' partial motion to dismiss, the Court should reject plaintiffs' request and dismiss the individual capacity claims. *See Hernandez*, 367 F.3d at 67 (cautioning that "notice pleading notwithstanding, Rule 12(b)(6) is not entirely a toothless tiger") (citation omitted).

## II. PLAINTIFFS ARE WRONG TO ASSERT THAT THE INDIVIDUALLY NAMED DEFENDANTS FAILED TO SUPPORT THEIR QUALIFIED IMMUNITY DEFENSE AS TO COUNTS II-V.

Plaintiffs next assert that the defendants only raised a qualified immunity defense as to their first free exercise claim (Count I) and thus "forfeited" the defense as to the other three formulations of that claim (Counts II-IV) and their free speech claim (Count V). *See* Pl. Resp. at 8-9, 17. This argument has no merit, as defendants plainly invoked qualified immunity as a defense to all five causes of action against them. Def. Motion at 2.[5] They also argued in their opening memorandum that "[n]either the Supreme Court nor the First Circuit has found a First Amendment violation based on a child welfare agency's action in enforcing a requirement that

---

[4] Contrary to plaintiffs' suggestion, the exhibits attached to the Complaint do not move the needle in their favor because they also do not reflect the particular actions of any LRT member in the decision-making process.

[5] That the defendants mistakenly referred to plaintiffs "*four* claims" at one point in their opening memorandum, Def. Memo. at 19 (emphasis added), is immaterial. Plaintiffs do not rely on this clerical error to support their present argument; and defendants correctly described plaintiffs' five causes of action earlier in their memorandum. *Id.* at 14.

all foster parents promote 'the physical, mental, and emotional well-being of a child placed in his or her care,' 110 Code Mass. Regs. § 7.104(1)(d), through the denial of a license to an applicant who is unwilling to support a child's sexual orientation or gender identity." Def. Memo. at 19. Defendants continued: "The patchwork of cases cited in the Complaint also falls short [of showing the rights alleged in the Complaint were 'settled law'], as many of those cases simply state general principles of constitutional law and none comes close (individually or together) to establishing a 'constitutional norm' regarding the free exercise and free speech rights of individuals applying to serve as foster parents." *Id.* at 19-20. To further demonstrate this point, defendants then explained why the few cases cited in the Complaint that actually involved a foster care system— *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), *Lasche v. New Jersey*, No. 20-2325, 2022 WL 604025 (3d Cir. Mar. 1, 2022) (unreported decision), and *Blais v. Hunter*, 493 F. Supp. 3d 984 (E.D. Wash. 2020)—would not have put the individually named defendants on notice that denying plaintiffs' license application based on plaintiffs' own failure to demonstrate a commitment to support a child's sexual orientation or gender identity would violate the First Amendment. Def. Memo. at 20-22 & n.14. But even that analysis was not limited to plaintiffs' Count I[6] and it did not otherwise restrict the defendants' assertion of qualified immunity to that count.

### III. PLAINTIFFS DO NOT IDENTIFY ANY AUTHORITY GUARANTEEING THEM THE PRECISE CONSTITUTIONAL PROTECTIONS THEY CLAIM, AND NONE EXISTS.

Equally important, because the defendants invoked qualified immunity, the burden falls on plaintiffs to show that the precise constitutional protections asserted in their Complaint were

---

[6] Indeed, in their Complaint, plaintiffs cite *Fulton* and *Blais* to support Count I, *Fulton* and *Lasche* to support Count II, and *Blais* again to support Count IV.

"settled law" at the time of the defendants' alleged conduct. *See Escalera-Salgado v. United States*, 911 F.3d 38, 41 (1st Cir. 2018). Their response does not come close to satisfying that burden. Instead they pull threads from Supreme Court jurisprudence prohibiting religious discrimination and compelled speech in other contexts to develop their own affirmative argument as to why the defendants' conduct was unlawful. But one party's post-hoc interpretation of existing authority does not "settled law" make. The law itself must have been sufficiently clear at the time of the challenged conduct for every reasonable official to understand the violative nature of their actions. *District of Columbia v. Wesby* ("*Wesby*"), 583 U.S. 48, 63 (2018) (cleaned up). Plaintiffs' own selection of authorities establish that is not the case here.

To support Count I, plaintiffs turn to *Fulton*, *Lasche* and *Blais* to argue that the defendants should have known that they "could not use their discretion [in the licensing process] to exclude those with the [plaintiffs'] religious beliefs—unless they could pass strict scrutiny." Pl. Resp. at 14. But as discussed in the defendants' opening memorandum at pages 20-22, the circumstances of *Fulton* are legally and factually dissimilar to those presented here, so that case would not have put a reasonable state official in the defendants' position on notice that denying plaintiffs' license application was unconstitutional. *See Wesby*, 583 U.S. at 63 (noting that, "[i]t is not enough [to defeat qualified immunity] that the rule is suggested by then-existing precedent . . . [t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply").[7] Neither *Lasche* nor *Blais* is binding on this Court; and those cases do not amount to the "robust consensus of cases" needed to defeat

---

[7] Contrary to plaintiffs' suggestion, the Court need not—and should not—decide at this early stage in the litigation whether the Department's conduct survives strict scrutiny, or any other level of review. *See* Pl. Resp. at 14-17. Defendants did not move to dismiss on that basis; and the resolution of the partial motion to dismiss does not require it.

qualified immunity. *See Wesby*, 583 U.S. at 65; *Estate of Rahim by Rahim v. Doe*, 51 F.4th 402, 413 (1st Cir. 2022); Def. Memo. at n.14.

To support Count II, plaintiffs rely on *Tandon v. Newsom*, 141 S. Ct. 1294 (2021), a per curiam decision granting an injunction pending appeal, to argue that "[t]he law was also clear that [d]efendants could not allow exemptions for secular reasons while denying an exemption for the [plaintiffs'] religious exercise." Pl. Resp. at 17. In *Tandon*, however, the Supreme Court struck down a COVID-era policy that prohibited in-home religious gatherings, while permitting "hair salons, retail stores, personal care services, movie theaters, private suites at sporting events and concerts, and indoor restaurants to bring together more than three households at a time." 141 S. Ct. at 1297. In sharp contrast here, the applicable Department regulations do not provide for any exemptions to the requirements plaintiffs failed to fulfill (*i.e.*, that a foster parent applicant demonstrate the ability to promote the well-being of a child placed in their care, including "supporting and respecting a child's sexual orientation or gender identity," 110 Code Mass. Regs. § 7.104(1)(d), and to respect and support the integrity of the child's racial, ethnic, linguistic, cultural, and religious background, *id.* § 7.104(1)(e)). Plaintiffs attempt to gloss over that fact by pointing to *other* Department regulations that permit limited waivers to *other* aspects of the caregiver assessment. *See* Pl. Resp. at 18. But the activities allowed by these limited waivers—which are only available to applicants for child-specific and/or kinship homes, *see* 110 C.M.R. §§ 7.105(7) & 7.105A—are not comparable to the activity in which plaintiffs seek to engage; at the very least, those activities are not so obviously comparable as the various types of in-person gatherings at issue in *Tandon*. All this is to say that nothing in *Tandon* can reasonably be construed to have put defendants on notice that the existence of exemptions in other regulatory provisions would render the LRT's decision about plaintiffs' license application

unconstitutional. *See Estate of Rahim*, 51 F.4th at 413 (noting that, "[w]hile a case 'directly on point' is not required, 'existing precedent must have placed the statutory or constitutional question beyond debate'").

For Count III, plaintiffs endeavor to wedge this case within the paradigm of overt religious discrimination shown in *Masterpiece Cakeshop v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719 (2018). Pl. Resp. at 22. But the extreme religious hostility voiced by some of the state-level decisionmakers in *Masterpiece Cakeshop* is a far cry from the factual observations about plaintiffs' religious beliefs collected during the Department's assessment process here. *See Masterpiece Cakeshop,* 138 S. Ct. at 1729 (commissioner stating, "[f]reedom of religion and religion has been used to justify all kinds of discrimination throughout history, whether it be slavery, whether it be the holocaust" and "to me it is one of the most despicable pieces of rhetoric that people can use to . . . hurt others"). Again, plaintiffs' chosen authority cannot reasonably be construed to have put defendants on notice that their conduct in accepting the license study report and explaining their rationale for denying plaintiffs' application would violate plaintiffs' free exercise rights. *See Estate of Rahim*, 51 F.4th at 413.

For Count IV, plaintiffs invoke caselaw regarding the withholding or revoking of public benefits to assert that defendants violated "clearly established law by excluding the [plaintiffs] from the public foster care program because of their religious views about sex, gender, and marriage," Pl. Resp. at 22. *See Carson v. Makin*, 142 S.Ct. 1987 (2022), *Trinity Lutheran Church of Columbia v. Comer*, 582 U.S. 449 (2017); *El Dia v. Rossello*, 165 F.3d 106 (1st Cir. 1999), all cited at Pl. Resp. at p. 22. But they do not offer any support for the novel theory that the ability to serve as a foster parent constitutes a "public benefit" akin to the state-run tuition assistance program in *Carson* or the state-run grant program in *Trinity Lutheran Church of Columbia*. Nor

do they explain how the First Circuit's holding in *El Dia*—that the Governor of Puerto Rico violated the First Amendment by withdrawing government advertising from a newspaper in retaliation for bad press—should have guided the defendants in evaluating plaintiffs' application to serve as foster parents. Because this line of cases is so far afield from the present circumstances, no reasonable person would have known that the legal principles set forth therein would govern the Department's licensing decision. *See Ablordeppey v. Walsh*, 85 F.4th 27, 33 (1st Cir. 2023) (affirming application of qualified immunity defense where plaintiff advanced legal theories that the court had previously recognized but that had "only arisen in contexts far afield from the claims presented in this case").

      Finally, for Count V, plaintiffs attempt to portray the defendants' licensing decision as compelled speech, in the vein of *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943), *Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Bos.*, 515 U.S. 557 (1995), and *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000). *See* Pl. Resp. at 22-23. Yet again, they run afoul of "[t]he longstanding principle that 'clearly established law' [for the purposes of qualified immunity] should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017). Having failed to identify any controlling authority finding a free speech violation "particularized to the facts of this case," *id.* (cleaned up), plaintiffs cannot defeat the defendants' qualified immunity against their free speech claim.

***

      For all of the reasons set forth above and in defendants' memorandum in support of its partial motion to dismiss (ECF No. 60), the remaining individually named defendants (Anna Moynahan, Theresa Harris, Dawn Sweetman, Tywanna Jones, Caitlynn Levine, Euphemia

Molina, Stacy Clark, Luz Estrada, and Angel Emerson) respectfully request that this Court dismiss plaintiffs' claims against them, with prejudice.

                                          Respectfully submitted,

                                          ANDREA JOY CAMPBELL
                                          ATTORNEY GENERAL

                                          */s/ Kimberly Parr*
                                          Kimberly Parr (BBO No. 679806)
                                          Michael Shiposh (BBO No. 680131)
                                          Assistant Attorney General
                                          Government Bureau
                                          One Ashburton Place
                                          Boston, MA 02108
                                          (617) 963-2076
                                          kimberly.parr@mass.gov
                                          michael.shiposh@mass.gov

Date:   January 17, 2024

## CERTIFICATE OF SERVICE

      I certify that this document, filed through the Court's ECF, system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants by first-class mail on January 17, 2024.

                                          */s/ Kimberly Parr*
                                          Kimberly Parr
                                          Assistant Attorney General