IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

MICHAEL and CATHERINE BURKE,

   *Plaintiffs*,

v.

KATE WALSH, in her official capacity as Secretary of the Massachusetts Executive Office of Health and Human Services, *et al.*

   *Defendants*.

Civil Action
No. 1:23-cv-11798-MGM

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR EXTENSION OF TIME**

Plaintiffs respectfully submit this memorandum of law in opposition to Defendants' motion for a 90-day extension of the dispositive motions briefing schedule. ECF No. 114.

## INTRODUCTION

Plaintiffs Michael and Catherine Burke filed this case over two years ago, seeking justice from what this Court called a "clearly established" First Amendment violation: Defendants "us[ing] their discretion to exclude those with [Plaintiffs'] religious beliefs." ECF No. 85 at 17.

Now, Defendants move to extend the dispositive motions deadline by 90 days, to January 30, 2026. ECF No. 114. Fact discovery closed on June 30, 2025. ECF No. 107. This means that, if Defendants' motion is granted, they will have *seven months* from the close of discovery to move for summary judgment. What is more, that motion would not be heard until "after March 23, 2026." ECF No. 114 at 3. That means any trial in this case would likely not occur until this case enters its fourth year. Nothing about this request demonstrates the diligence Defendants are required to show in

1

support of "good cause" to modify this Court's scheduled deadlines. *See* L.R. 16.1(g), 40.3(a).

Nor do the reasons Defendants offer meet the "good cause" standard. Defendants have known about the Burkes' move to Florida since the end of May. But Defendants waited three months before moving to dismiss on that basis. Moreover, while Defendants claim concern about the newly filed *Jones* case and competing deadlines, the facts tell a different story. *Jones* was filed on September 3. But on August 29—the week before *Jones* was filed—Defendants moved to dismiss and "request[ed] that this motion be set for hearing in advance of summary judgment briefing … and/or that summary judgment deadlines as to the official capacity claims be extended until after the Court's adjudication of this motion." ECF No. 110 at 2. Now, after waiting almost another three weeks, Defendants are making that same request again—with the upshot being a total of seven months to write a summary judgment brief.

Michael and Catherine Burke have already experienced the heartbreak of infertility and the indignity of religious discrimination. After three years of living with both, they want resolution and the expungement of their record needed to move forward. Delaying this case into its fourth year—for reasons Defendants have known about for months—is prejudicial to the Burkes. Defendants' motion should be denied, and the Court's current schedule should be followed.

## LEGAL STANDARD

A party that seeks to modify a Court schedule must show "good cause." Fed. R. Civ. P. 16(b); L.R. 16.1(g), 40.3(a); *accord Steir v. Girl Scouts of USA,* 383 F.3d 7, 12 (1st Cir. 2004). Good cause focuses on "the diligence (or lack thereof)" of that party. *Steir*, 383 F.3d at 12. Indeed, that party's "showing of diligence [is] necessary to establish good cause." *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154-55 (1st. Cir. 2004); *accord Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013). "The touchstone of the good cause inquiry is the diligence of the

party seeking the amendment. Prejudice to the opposing party nevertheless remains a relevant consideration." *Prosight - Syndicate 1110 At Lloyds v. M. L. Schmitt, Inc.*, 344 F.R.D. 121, 124-25 (D. Mass. 2023) (Mastroianni, J.) (quoting *O'Connell*, 357 F.3d at 155).

## ARGUMENT

Here, Defendants make two arguments to change this Court's dispositive motions schedule, and neither satisfies the "good cause" standard. That is because neither argument shows Defendants' diligence. The extension would prejudice the Burkes in finally receiving justice from Defendants' religious discrimination. Defendants' motion should therefore be denied.

### I. Defendants' motion to dismiss is not a basis to extend the dispositive motions deadline.

Defendants delayed in bringing their motion for partial dismissal; that does not justify yet another delay to "allow time for the Court to consider the pending motion to dismiss" regarding the Burkes move to Florida. ECF No. 114 at 1. Defendants have known about the Burkes' move since the end of May, when Michael and Catherine Burke were deposed. *See* ECF No. 111-3 (Michael Burke deposition, May 28, 2025); ECF No. 111-4 (Catherine Burke deposition, May 29, 2025). Nonetheless, Defendants waited three months—until August 29, 2025—to file their motion to dismiss. ECF No. 111. That motion seeks to extinguish the Burkes' official capacity claims, meaning it is indisputably a "dispositive motion." *See Off. of Child Advoc. v. Lindgren*, 296 F. Supp. 2d 178, 183 (D.R.I. 2004) (citing *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 6 (1st Cir. 1999) ("Defendant's motion to dismiss is a dispositive motion because if granted, it will extinguish the claims set forth in Plaintiff's Complaint.")). This Court's "dispositive motions" deadline already contemplates multiple dispositive motions at once. *See* ECF No. 107 ("Dispositive motions, if any, shall be filed by November 1, 2025"). If Defendants wanted to modify that schedule to "allow" the

Court "time" to consider their motion to dismiss in isolation, *see* ECF No. 114 at 1, they could have done so within the weeks after learning that the Burkes moved to Florida. Instead, they waited three months to move to dismiss (August 29, 2025). Now, nearly a month later (September 25, 2025), they ask this Court for a 90-day delay in the Court considering any other dispositive motion. This is not diligence. It is delay piling upon delay. And "protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission" to modify deadlines. *Somascan*, 714 F.3d at 64 (quoting *Steir*, 383 F.3d at 12).

Moreover, Defendants' sought extension would frustrate, rather than promote, "judicial economy" at summary judgment. ECF No. 114 at 3. The same claims, same evidence, and same defenses will be at issue on summary judgment regardless of whether partial dismissal is granted. The same claims will be at issue because the parties agree that the Burkes have standing to press their individual capacity claims at summary judgment. The Burkes made the same five claims against all Defendants, regardless of capacity. *See* Compl. ¶¶ 155-211. Ten were sued in their personal and official capacities and two in their official capacities only. *See id.* ¶¶ 21-32 (naming the Defendants). Therefore the Court will consider all five counts at summary judgment even if the official capacity defendants are dismissed.

The same evidence will also be at issue on summary judgment. The ten personal capacity defendants were all deposed, and all have relied upon DCF's policies and practices in their defense. The two official-capacity-only defendants are high-ranking officials in DCF, they were not personally deposed, and the Burkes have not alleged their personal involvement in the violation of the Burkes' First Amendment rights. *See id.* ¶¶ 33-182. If those latter two defendants are dismissed, nothing in the factual record leaves this case. The same evidence underpins all five of the Burkes'

4

constitutional claims. *See id.* ¶¶ 155-211 (incorporating all allegations into each claim).

The same defenses will be at issue because all Defendants raised the same 16 defenses. ECF No. 89 at 34-35. This means all the defenses will be live at summary judgment—even if Defendants' motion to dismiss is granted. In short, no matter how the Court rules on Defendants' motion to dismiss, the Court will still need to consider the individual capacity claims—against the same defendants, based on the same evidence.

"Judicial economy" is thus not improved by Defendants' requested delay. By contrast, what does further judicial economy is what the current, Court-ordered schedule contemplates: considering all dispositive motions at the same time.

## II. Defendants' new case is no justification to delay the resolution of this case.

Defendants' arguments are based on speculation about the *Jones* case and, once again, Defendants delayed bringing their own motion. Because Defendants are concerned about "simultaneous briefing," in the *Jones* case, ECF No. 114 at 3, they now seek a 90-day delay in the dispositive motions deadline.

This is unnecessary. On August 29, when Defendants filed their motion for partial dismissal, they stated that they wanted the Court to hear their motion before November 1, or to delay summary judgment while the motion was pending. *See* ECF No. 110 at 2. The *Jones* case had not even been filed at that time. Now, almost three weeks later, Defendants finally move for an extension.

This is not justified by *Jones*—which does not even have a preliminary injunction motion on file, let alone a scheduled hearing. Nor, moreover, have Defendants identified to Plaintiffs or the Court the "major briefing and argument deadlines" they now have in October and November, or explained how the filing of one additional case can disrupt the Commonwealth's ability to meet its deadlines in other cases, given

5

the Attorney General's Office's significant resources and highly skilled staff. ECF No. 114 at 3. *Cf. Macaulay v. Anas*, 321 F.3d 45, 49 (1st Cir. 2003) ("Courts simply cannot afford to let lawyers' schedules dominate the management of their dockets.").

Rather, this request is driven by Defendants' expressed desire to force a ruling on their motion to dismiss before summary judgment. *See* ECF No. 114 at 3 (characterizing their 90-day delay as a "modest extension of the deadlines for briefing on any claims that remain after resolution of the motion to dismiss"). But "there can be but one answer" to "who is running the court"—the judge, not counsel. *Mendez v. Banco Popular de P.R.*, 900 F.2d 4, 7 (1st Cir. 1990) (quoting *Higuera v. Pueblo Int'l, Inc.*, 585 F.2d 555, 557 (1st Cir. 1978)).

### III. Granting Defendants' motion would prejudice the Burkes.

Last month, August 2025, marked two years since the Burkes filed their complaint. This Court already held that they alleged a "clearly established" First Amendment violation. ECF No. 85 at 17. As the Supreme Court has repeatedly "explained, … '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2364 (2025) (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020)).

Yet if Defendants' motion were to be granted, summary judgment alone—never mind any subsequent proceedings—would not be resolved until "after March 23, 2026." ECF No. 114 at 3. A final resolution would likely not occur until after this case enters its fourth year. And as extension requests from Defendants are something of a pattern, the Burkes might not see justice until five or six years after the discrimination they experienced in 2022. That delay prejudices the Burkes. That prejudice is "relevant" in showing why—combined with Defendants' lack of diligence—there is not good cause to modify this Court's dispositive motions schedule

again. *See Prosight - Syndicate*, 344 F.R.D. at 124-25 ("Prejudice to the opposing party nevertheless remains a relevant consideration.").

The *Jones* case makes the prejudice even more apparent. The *Jones* complaint alleges that after the Burkes filed their case and the Court let the claims go forward, DCF doubled down on its policies by denying licenses to more qualified foster families during the pendency of this litigation. *See* Compl. at ¶¶ 62-112, *Jones v. Mahaniah*, 4:25-cv-12449 (D. Mass. Sep. 3, 2025), ECF No. 1 (alleging discriminatory effects of DCF policies from 2023 to 2025 on multiple religious families). The fact that DCF decided to continue its behavior, knowing that it would likely create more legal challenges, is no justification for delaying the resolution of the Burkes' case. Indeed, consideration of this case with a full factual record of DCF's policies and procedures may aid the Court and parties in *Jones* by streamlining that litigation. The Burkes are entitled to finally reach a judgment that clears their name and lets them be free to seek to foster and adopt again. "Having granted several continuances, the court [is] justified in drawing a line in the sand." *Macaulay*, 321 F.3d at 49.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendants' Motion, in its entirety.

Dated: September 26, 2025

Respectfully submitted,

/s/ *Lori H. Windham*

| | |
|---|---|
| Michael Gilleran | Lori H. Windham* |
|  BBO No. 192210 |  DC Bar No. 501838 |
| Fisher Broyles, LLP | William J. Haun* |
| 75 State Street |  DC Bar No. 1024405 |
| Suite 100 | Benjamin Fleshman* |
| Boston, MA 02109 |  DC Bar No. 1781280 |
| (781) 489-5680 | Robert K Ellis* |
| |  DC Bar No. 90035259 |

The Becket Fund for Religious Liberty
1919 Pennsylvania Ave, N.W.
 Suite 400
Washington, DC 20006
(202) 955-0095

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

    I, Lori H. Windham, hereby certify that a true copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 26, 2025.

                                                  /s/ *Lori H. Windham*
                                                  Lori H. Windham