IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL and CATHERINE BURKE, *Plaintiffs*, v. KIAME MAHANIAH, in his official capacity as Secretary of the Massachusetts Executive Office of Health and Human Services, *et al*. *Defendants*. | Civil Action No. 3:23-cv-11798-MGM |

**PLAINTIFFS' MOTION TO AMEND SCHEDULING ORDER
AND REOPEN RULE 30(b)(6) DEPOSITION**

Pursuant to Federal Rules of Civil Procedure 16(b)(4) and 30(a)(2)(ii) and Local Rule 16.1(g), Plaintiffs Michael and Catherine Burke respectfully move the Court to amend its scheduling order of May 23, 2025, ECF No. 107, for the limited purpose of reopening their Rule 30(b)(6) deposition, so that they may depose DCF's Rule 30(b)(6) witness concerning the meaning and application of DCF's new policies and procedures, which were created five months after the close of discovery.

**FACTUAL AND PROCEDURAL BACKGROUND**

Fact discovery in this case concluded on June 30, 2025. ECF No. 107. In fact discovery, the parties agreed to a total of 4,200 minutes (10 days) of depositions, *see* ECF No. 94 at 4; Plaintiffs conducted nine days' worth of depositions, including a 30(b)(6) deposition, leaving ample time for one more day of deposition. The parties filed their initial motions for summary judgment on October 31, 2025, and November 1, 2025. ECF. Nos. 123, 125. Due to the initial failed service of expert depositions, the Court denied those motions as moot and set the case for the re-opening of expert discovery in its order of December 4, 2025. ECF No. 137. On December 18, 2025, the parties submitted a proposed schedule for expert discovery and renewed summary judgment briefing, which the Court entered. ECF No. 144.

1

On Friday, December 12, 2025, Defendants informed Plaintiffs that they had amended the regulation and several policies controlling the licensing of foster parents. Those amended policies are attached as Exhibits 1-5. They provided these policies to Plaintiffs. They represented to Plaintiffs that, under these amended policies, the Burkes could qualify for a foster parent license if they otherwise met the criteria, including Massachusetts residency. In conferrals, Defendants have not ruled out reliance on these policies at some point in the litigation, and the policies are subject to judicial notice in any event. After reviewing these policies, Plaintiffs believe they are relevant to the merits on summary judgment.

The parties conferred regarding the amendments on December 17, 2025, and later that day, Plaintiffs asked for Defendants' consent to re-open the Rule 30(b)(6) deposition to seek testimony on the amended regulation and policies. Defendants do not consent to this motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 16(b)(4) allows this Court to modify "[a] schedule … for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *accord* L.R. 16.1(g). The good-cause standard focuses on the diligence of the movant in seeking modification of the schedule. *Steir v. Girl Scouts USA*, 383 F.3d 7, 12 (1st Cir. 2004). Prejudice to the nonmovant is relevant, but not the dominant consideration. *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004); *accord Prosight - Syndicate 1110 At Lloyds v. M. L. Schmitt, Inc.*, 344 F.R.D. 121, 124-25 (D. Mass. 2023) (Mastroianni, J.) (quoting *O'Connell*, 357 F.3d at 155).

Federal Rule of Civil Procedure 30(a)(2)(ii) permits depositions with leave of the Court if "the deponent has already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(ii). Leave is granted consistently with Federal Rule of Civil Procedure 26(b)(1), *id.*, which allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action" and "the parties' relative access to relevant information." Fed. R. Civ. P. 26(b)(1).

# ARGUMENT

**I. Leave to re-open the Rule 30(b)(6) deposition is warranted due to new factual and legal developments that DCF created more than five months after the close of discovery.**

"[C]ourts have generally allowed re-opening a deposition where, as here, new information is unearthed only after the initial deposition." *Le v. Diligence, Inc.*, 312 F.R.D. 245, 245 (D. Mass. 2015). When that is so, and "critical information that could severely undermine" a claim or defense has surfaced, a second deposition is a party's access to "matters uniquely within [the deponent's] knowledge" and of significant "potential importance" to the case. *United States v. Prevezon Holdings, Ltd.*, 320 F.R.D. 112, 115 (S.D.N.Y. 2017). The "evident knowledge of the witnesses in particular areas" makes a second deposition particularly likely "to provide additional information not obtainable at the first deposition[ ]." *Collins v. Intern. Dairy Queen*, 189 F.R.D. 496, 498 (M.D. Ga. 1999). For example, "a high ranking lawyer" in a government department reasonably could be thought to "have further information relevant to any potential" government misconduct. *Judicial Watch, Inc. v. Dep't of Com.*, 127 F. Supp. 2d 228, 231 (D.D.C. 2000). Courts also find good cause to reopen a deposition when a deponent has made "changes in … substance" to their answers, Fed. R. Civ. P. 30(e)(1)(B), and a party seeks to "explore[ ]" why answers to a first deposition were "revised," *United States v. Louisiana*, 196 F. Supp. 3d 612, 678 (M.D. La. 2016) (case dismissed by joint stipulation Aug. 21, 2017).

**A. DCF changed the rules at the heart of this case.**

Five months after the close of discovery, DCF changed the regulation and policies it relied upon to deny the Burkes a license. It is now representing that these changes mean the Burkes and other families with similar beliefs can be licensed. *See* Pls.' Mot. To Withdraw Mot. For Prelim. Inj. at 2, *Jones v. Mahaniah,* No. 4:25-cv-12449 (E.D. Mass. Dec. 16, 2025), ECF No. 29 ("DCF will not deny Plaintiffs a license to become foster parents based on Plaintiffs' religious objections to the previous requirements related to LGBTQIA+."); Order, ECF No. 30 (granting motion to withdraw). This is contrary to DCF's prior testimony, and Plaintiffs have had no opportunity to explore through discovery how these policies are interpreted and applied.

The changes to the regulation and policies include the following:

*110 CMR 7.104(1)(d)* (Exhibit 1). The Burkes would be required to "support[ ] and respect[ ] a child's individual identity," Ex. 1 at 1, rather than his or her "sexual orientation or gender identity" in the old version, ECF No. 127-34 at 22. The term "individual identity" is undefined. *See, generally,* Ex. 1.

*Licensing of Foster, Pre-Adoptive, and Kinship Families Policy* (Exhibit 2). The prior policy required the Burkes to "support connections to the child's … sexual orientation and gender identity." ECF No. 127-3 at 20. Now, the policy would require them to "support connections to the child's individual background, [and] identity." Ex. 2 at 20.

*Foster Parent Agreement* (Exhibit 3). The new agreement requires foster parents to "[r]espect the rights of foster children under Department policy and state law." Ex. 3 at 3. The previous requirement to "[s]upport, respect, and affirm the foster child's sexual orientation, gender identity, and gender expression" is deleted, but the new agreement requires foster parents to "support[ ] a child's individual identity and needs," Ex. 3 at 3. The new agreement also states that DCF will make "[p]lacement decisions" that match a child to foster parents who can "care for the child's well-being," Ex. 3 at 1.

*Safe and Supported Placements Policy* (Exhibit 4). The Department has added nondiscrimination language stating it "does not tolerate discrimination based on … gender identity or expression" or "sexual orientation" for foster children. Ex. 4 at 2. The requirements for foster parents have changed from "support[ing] and affirm[ing] LGBTQIA+ children/youth," ECF No. 127-4 at 16, to "support[ing]" them, Ex. 4 at 16. The distinction between "support" and "affirm" is not explained, nor does the policy state what constitutes discrimination.

*LGBTQIA+ Nondiscrimination Policy* (Exhibit 5). The Burkes would not have to "use the terms an individual uses"—their pronouns. *Compare* ECF No. 127-9 at 2 *with* Ex. 5 at 2. But they would have to "be respectful of how individuals ask to be identified," ECF No. 127-9 at 2, not "support and affirm," *id.*, only "support," Ex. 5 at 2. DCF previously took the position that families who would not agree to use preferred pronouns should not be licensed. ECF No. 123-2 ¶ 20 (citing

4

Silvia 30(b)(6) Tr. at 94:5-19). DCF no longer "screens" on whether prospective foster parents are "affirming," but "recruits" on that basis. *Compare* ECF No. 127-9 at 3 with Ex. 5 at 2. DCF deleted language saying children are "placed consistent with their gender identity," instead adding language that DCF commits to "recruiting" parents "to care for LGBTQIA+ children." *Compare* ECF No. 127-9 at 3 with Ex. 5 at 2. The Department has added nondiscrimination language stating it "does not tolerate discrimination … based on … gender identity or expression" or "sexual orientation." Ex. 5 at 2. The prior policy "ensure[d] that … foster parents … do not make attempts to convince LGBTQIA+ children/youth to reject or modify their sexual orientation, gender identity, or gender expression." ECF No. 127-9 at 5. The new policy "ensures that … foster parents … are committed to providing … an environment where children's individual identities are supported and understood." Ex. 5 at 4.

Defendants also have not amended the Gender-Affirming Medication Consent Policy, attached as Ex. 6. In the prior deposition, Defendants' 30(b)(6) witness testified that refusal to agree to comply with this policy would be a reason to deny a foster parent license. *See* ECF No. 123-2 ¶ 20 (citing Silvia 30(b)(6) Tr. at 200:10-201:4 (foster parents could not decide about such a procedure on their own)); *see also* Ex. 7, Silvia 30(b)(6) Tr. at 201:21-204:4 (explaining the consequences of foster parents' opposition). The interaction of the amended policies with this unamended policy remains unclear.

Likewise, Defendants previously took the position that the policies did not permit exceptions and that it was not feasible to license families like the Burkes and then deal with any potential concerns at the placement stage. *See* Defs.' MSJ, ECF No. 126 at 26-27 (citing Defs.' SUMF ¶ 62-63); Defs.' SUMF, ECF No. 127 ¶ 63 (citing Peel 30(b)(6) Tr. at 127:7-128:2); *id.* at 4-5 (quoting SUMF ¶ 36) (quoting Peel 30(b)(6) Tr. at 128:20-129:16). It appears that under the amended policies, Defendants propose to do exactly that. That is a new answer, and worlds away from the answer Defendants gave in June.

While DCF has provided Plaintiffs the amended regulation, amended policies, redlines, and one-paragraph regulatory justification for these changes, significant questions remain. And all of

5

them would justify reopening the Rule 30(b)(6) deposition. None of these new terms and framings—for example, the new 110 CMR 7.104's use of "child's identity" in place of "sexual orientation and gender identity"—was discussed in prior depositions. Plaintiffs seek testimony on what these new terms mean. *Le*, 312 F.R.D. at 245. Plaintiffs also seek clarification of Defendants' days-old theory that now, the Burkes *could* be licensed. *See PlayUp, Inc. v. Mintas*, 344 F.R.D. 429, 438 (D. Nev. 2023) ("Good cause may also be found for a second deposition when existing claims have been amended with new theories."); *see also Jones,* ECF No. 29 (withdrawing motion due to changed circumstances). Among other things, it is unclear to Plaintiffs whether a Licensing Review Team could still deny the Burkes a license on the basis that their beliefs about sexual orientation or gender identity would not be deemed to sufficiently support a child's identity. It is also unclear how Defendants' policies apply to licensed families at the placement stage. Altogether, if such large "changes … in substance" would justify reopening a Rule 30(b)(6) deposition due to amendments, Fed. R. Civ. P. 30(e), *Louisiana*, 196 F. Supp. 3d at 678, there is all the more need to reopen a deposition when those changes have been made on an emergency basis after discovery has closed yet well before the filing of summary judgment motions. This new factual and legal information is more than sufficient reason to reopen the Rule 30(b)(6) deposition.

### B. Plaintiffs diligently sought to reopen discovery.

Here, Plaintiffs have been diligent in seeking to reopen the Rule 30(b)(6) deposition. There was no "ample opportunity to obtain the information by discovery" because it is brand new. Fed. R. Civ. P. 26(b)(2)(C)(ii). Plaintiffs received the new policies from Defendants on Friday, December 12, 2025; conferred with Defendants' counsel to discuss the meaning and application of DCF's new regulation and policies on Wednesday, December 17, 2025; asked counsel's consent to re-opening that same day; and filed this motion 11 days after learning of the changes.

### C. Plaintiffs seek limited discovery that is central to both parties' theories.

Defendants have put it past question that the new regulation and policies are "relevant" both to Plaintiffs' claims and to Defendants' defenses. Fed. R. Civ. P. 26(b)(1). They are central. As an initial matter, Defendants insisted that their policies compelled them to deny a license to the Burkes

6

because no exceptions could be made and also insisted that they had a compelling government interest to avoid placing children with the Burkes, *see* ECF No. 126 at 25-26. Now, however, Defendants admit that the Burkes and others with similar beliefs could be licensed under today's version of DCF policy. Like Plaintiffs, Defendants relied extensively on the original Rule 30(b)(6) deposition in their cross-motion for summary judgment. *See generally* ECF No. 126; ECF No. 123-1. Therefore "the importance of the discovery in resolving the issues" is quite high. Fed. R. Civ. P. 26(b)(1). Thus, limited discovery into what these changes mean is of great "importance" to the "issues at stake." *Id.* Finally, DCF knows best what its rules mean—especially when those rules are days old and as yet unapplied. DCF has far and away greater "relative access"—sole, access, really—"to [the] relevant information." *Id.* Thus a single deposition to determine what DCF's policies mean, and so what the changes mean, is "proportional to the needs of the case." *Id.*

Plaintiffs do not propose a sweeping re-opening of discovery, but a limited re-opening to take one 30(b)(6) deposition of not more than seven hours—time that the parties already agreed to when setting the deposition schedule, and time that has yet to be otherwise used.

Plaintiffs seek leave to depose the witness on the following narrow topics:

1. DCF's understanding of the meaning of the amended regulation and policies.

2. DCF's intended application of the amended regulation and policies.

3. DCF's reasons for amending the policies.

4. Whether the Burkes would satisfy DCF's standards for licensure under the amended regulation and policies.

5. How the amendments to the regulation and policies further Defendants' stated interests in this case.

6. Whether the amendments to the regulation and policies constitute a less restrictive alternative to outright denial of the Burkes' license.

**D. A limited re-opening of discovery will not delay the case or prejudice Defendants.**

The parties are already engaged in expert discovery, which will conclude by February 13, 2026. ECF No. 144. This deposition could occur during the same time period, ECF No. 137, and would

create no delay atop what the parties already face. This is one, limited deposition—within the amount of time the parties already agreed to allot to depositions—so "the burden or expense of the proposed discovery" would not "outweigh[ ] its benefit." Fed. R. Civ. P. 26(b)(1). As this is new information, discovery would not be "cumulative" or "obtained from some other source." Fed. R. Civ. P. 26(b)(2)(C)(i).

### E. Conclusion

WHEREFORE, Plaintiffs ask this Court to modify its scheduling order of May 23, 2025, and reopen the Rule 30(b)(6) deposition for one day of up to seven hours on the topics stated in this Motion.

Dated: December 23, 2025

Michael Gilleran
BBO No. 192210
Fisher Broyles, LLP
75 State Street
Suite 100
Boston, MA 02109
(781) 489-5680

Respectfully submitted:

/s/ Lori H. Windham
Lori H. Windham
DC Bar No. 501838
William J. Haun
DC Bar No. 1024405
Benjamin Fleshman
DC Bar No. 1781280
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave, N.W., Suite 400
Washington, DC 20006
(202) 955-0095
lwindham@becketfund.org

## CERTIFICATE OF CONFERENCE LOCAL RULE 7

I certify that, on December 17, 18, and 22, 2025, I conferred via email with counsel for the Defendants, and on December 22, 2025, Defendants stated that they would oppose this motion.

/s/ Lori H. Windham  
Lori H. Windham

## CERTIFICATE OF SERVICE

I certify that this document, filed through the Court's ECF system on December 23, 2025, will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Lori H. Windham  
Lori H. Windham