# EXHIBIT G

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF MASSACHUSETTS
 3    _____
 4    MICHAEL and CATHERINE BURKE,
 5          Plaintiffs,
 6       v.                                Civil Action No.
 7    KATE WALSH, in Her Official          1:23-cv-11798-MGM
 8    Capacity as Secretary of the
 9    Massachusetts Executive Office
10    of Health and Human Services,
11    et al.,
12          Defendants.
13    _____
14           VIDEOTAPED DEPOSITION OF TYWANNA JONES
15    DATE:           Wednesday, May 14, 2025
16    TIME:           9:01 a.m.
17    LOCATION:       Remote Proceeding
18                    Veritext
19                    1250 I Street Northwest, Suite 901
20                    Washington, D.C. 20005
21    REPORTED BY:    Charles Olson
22    JOB NO.:        7361104
```

Page 84

```
 1        Q    Well, the assessment occurred before this
 2   document was produced; right?
 3        A    Yes.
 4        Q    Okay.  And then you emailed the Burkes in
 5   January, identifying some of the concerns from your
 6   supervisor; right?
 7        A    Correct.
 8        Q    Okay.  So by this point -- and you said that
 9   you prepared this document; right?  The one that we're
10   looking at?
11        A    Yes.
12        Q    Okay.  So by this point, you've read the
13   license study?
14        A    Yes.
15        Q    Okay.  And have you raised any concerns at
16   this point?
17        A    I do not recall.
18        Q    Okay.  All of the same conditions that Ms.
19   Mack proposed appear to be here; right?
20        A    Yes.
21        Q    Okay.  If you were concerned about them,
22   would you have taken them out?
```

Page 107

1   Q   Yeah.  Is the deeper conversations that
2  happen that we talked about -- is that, like, a
3  case-by-case basis?
4             MR. BRYANT:  Objection to form.
5             THE WITNESS:  It's related to the
6  family.
7  BY MR. HAUN:
8   Q   Right.  So kind of family-by-family could be
9  case-by-case?
10   A   Yes, if a family is -- yes, depending on how
11  that family -- what that family writes or what's part
12  of that assessment for that family.
13   Q   Okay.  All right.  Let's look at the next
14  line here.  Well, actually, we're going to go down to
15  the next entry.  So it says: "Name, Dawn Sweetman.
16  Date, March 7, 2023."  Do you see that?
17   A   Yes.
18   Q   Okay.  So Dawn Sweetman -- her comment says
19  "PLS approve."  Do you see that?
20   A   Yes.
21   Q   Okay.  What does that mean to you?
22   A   That means to approve so that it can go to

Page 120

1  it.
2      Q    Right.  But in the context of this report,
3  Ms. Mack seems to be saying you can be approved with
4  these conditions.  Is that the context in which it was
5  mentioned to the Burkes?
6           MR. BRYANT:  Objection to form.
7           THE WITNESS:  I have no idea what she
8  spoke to the Burkes about, whether it's -- she's
9  making the recommendation or that it's approved.  I
10 don't -- the process.  So I don't know what exactly
11 she informed Mr. and Mrs. Burke.
12 BY MR. HAUN:
13     Q    But you agree that Ms. Mack did approve
14 Catherine and Michael Burke to be foster parents;
15 right?
16          MR. BRYANT:  Objection to form.
17          THE WITNESS:  She can't approve them.
18 She can just make a recommendation.
19 BY MR. HAUN:
20     Q    Right.  She recommended that they be
21 approved; right?
22     A    Yes.

Page 121

1  Q   Okay. And then you input that
2  recommendation into the system; right?
3  A   Yes.
4  Q   Okay. And then Ms. Sweetman, your
5  supervisor, said, "Please approve"; right?
6  A   Yes.
7  Q   Okay. And then in an email on Wednesday,
8  March 8, 2023, you mentioned to the Burkes that your
9  supervisor approved the study; right?
10 A   Yes.
11 Q   Okay. And then you said "You're one step
12 closer"; right?
13 A   Yes.
14 Q   Okay. And you put a smiley face next to
15 that; right?
16 A   Yes.
17 Q   Okay. And at no point, you have mentioned
18 that this first condition that Ms. Mack mentioned as
19 part of the approval is a policy violation; right?
20         MR. BRYANT:  Objection to form.
21         THE WITNESS:  No.
22 //

Page 125

1  opposite of that.  So why don't you ask her the
2  question?  You can have an accurate record.
3             If you want to excuse her in the room,
4  we could talk about this.  She misspoke.  This is a
5  deposition to get at the truth; okay?  So if she
6  misspeaks and she says the wrong word, that is not her
7  testimony; okay?  You heard her say it.  I heard her
8  say it.  She should correct it.
9             She should be given that opportunity.
10 Do we really need to wait until the end of the
11 deposition to go over this?  It's your deposition.
12 Conduct it how you wish, if you want that on the
13 record.
14 BY MR. HAUN:
15    Q   Ms. Jones, is there anything in your
16 testimony that you would like to correct?
17    A   Will you please restate or ask the
18 question -- the last question you asked, please?
19    Q   Sure.  In the years that the LRT team has
20 been reviewing recommendations for foster care
21 licenses, have any of your recommendations not been
22 approved?

Page 126

1      A    Are you asking me including Mr. and Mrs.
2   Burke's -- the recommendation that was for Mrs. -- Mr.
3   and Mrs. Burke as well?
4      Q    Include them if you want.
5      A    So for the couple of families that were sent
6   to the LRT -- presented to the LRT team, they have not
7   denied those families.  They've only denied -- in my
8   experience, and I've only presented a -- a few,
9   they've -- only the Burkes have -- Mr. and Mrs.
10  Burke's have been denied.
11     Q    Okay.  And does that go for contractors as
12  well, contractor recommendations?
13     A    Yes.
14     Q    Let's pull up another document for -- just
15  to review here.  Let's see.  Exhibit 6?  Seven.
16  Exhibit 7 for identification.
17              (Jones Exhibit 7 was marked for
18              identification.)
19     A    Okay.  It's up.
20     Q    Do you recognize this document, Ms. Jones?
21     A    Yes.
22     Q    Okay.  What is this document?

1            MR. BRYANT:  Objection --

2            THE WITNESS:  They do, but they may

3  be -- as specialists may be more aware or

4  knowledgeable in certain or other areas.

5  BY MR. HAUN:

6     Q   So they might see something that you might

7  miss?

8            MR. BRYANT:  Objection --

9            THE WITNESS:  They could, or -- they

10 could, or they'd be able to make recommendations

11 regarding some -- some issue of concern, maybe.

12 BY MR. HAUN:

13    Q   So does that mean that it's not always

14 clear-cut in applying the policy?

15           MR. BRYANT:  Objection to form.

16           THE WITNESS:  I can't answer if it's

17 clear-cut.  I -- I know that whenever we meet, if

18 there are concerns, the policy's always applied.  It's

19 been my experience, anyways.

20 BY MR. HAUN:

21    Q   Do you think there needs to be this amount

22 of people meeting if the policy is clear-cut?

Page 181

1  bottom line here; right?
2     A   Yes.
3     Q   Okay.  And in your experience, have you ever
4  seen that happen before?
5           MR. BRYANT:  Objection to form.
6           THE WITNESS:  No.  In my experience, it
7  hasn't, because the other families were approved.
8  BY MR. HAUN:
9     Q   Okay.  Let's read the last paragraph here,
10 the one that begins with -- actually, I'm sorry.
11 Let's go to the paragraph before the last.
12          It says "Mike and Kitty are open to a
13 variety of children who have different levels of need,
14 including children who are blind or deaf, have
15 moderate medical needs, and have histories of mental
16 health challenges."  Is that what that sentence says?
17    A   Yes.
18    Q   Okay.  Does DCF have a need for more
19 families who can parent children who are deaf or
20 blind?
21    A   Yes.
22    Q   And did they have that need in March of

Page 182

1    2023?
2        A    Yes.
3        Q    Does DCF have a need for more families who
4    can parent children who have moderate medical needs?
5        A    Yes.
6        Q    Okay.  Did they have that need in March of
7    2023?
8        A    Yes.
9        Q    Okay.  Does DCF have a need for more
10   families who can parent children with a history of
11   mental health challenges?
12       A    Yes.
13       Q    Okay.  Does -- did DCF have that need in
14   March of 2023?
15       A    Yes.
16       Q    Okay.  Let's look at the next sentence.  It
17   says "They are also open to older children, up to age
18   12, and sibling sets."  Is that what that sentence
19   says?
20       A    Yes.
21       Q    Okay.  Does DCF have a need for more
22   families who can care for children up to age 12?

Page 183

```
 1        A    Yes.
 2        Q    And sibling sets?
 3        A    Yes.
 4        Q    Okay.  Did DCF have these needs in March of
 5   2023?
 6        A    Yes.
 7        Q    Okay.  So -- and then after this sentence,
 8   we move into the, as Ms. Mack says, "intense and
 9   careful consideration" that she gave regarding the
10   Burkes' views around LGBTQ issues.  Did you discuss
11   this recommendation at the LRT meeting?
12        A    Yes.
13        Q    Okay.  Did you consider whether the Burkes
14   could be approved with the conditions laid out by Ms.
15   Mack?
16        A    I believe that was -- that was part of the
17   conversation.
18        Q    Okay.  Why were these conditions not
19   suitable?
20        A    Because when referencing the policy, you
21   know, it seems the family, you know, would not be able
22   to support or welcome and affirm a child who -- who
```

Page 247

1  outcome was.
2       Q    So you -- do you agree or disagree with the
3  ultimate decision?
4       A    That was the decision of the -- the team
5  that --
6       Q    Yeah, I know.  I'm just asking if you agree
7  with that.
8       A    Well, yes, because -- because of the
9  comments that were made.  It did not seem -- it didn't
10 align with DCF's policy as them being able to support
11 a child according to DCF's policy to provide a safe
12 and nurturing, supportive environment.
13      Q    Did anyone in the meeting raise any concerns
14 about potential religious discrimination against the
15 Burkes?
16      A    Not that I recall.
17      Q    Okay.  Let's just take a look at the license
18 review study again.  This is going to be Exhibit --
19      A    I'm sorry.  I didn't hear you say which
20 exhibit.
21      Q    Hold on.  I'm --
22      A    Oh, okay.  I'm sorry.  I can't see you.  I'm

```
                                                      Page 260

 1              CERTIFICATE OF DEPOSITION OFFICER

 2              I, CHARLES OLSON, the officer before whom

 3    the foregoing proceedings were taken, do hereby

 4    certify that any witness(es) in the foregoing

 5    proceedings, prior to testifying, were duly sworn;

 6    that the proceedings were recorded by me and

 7    thereafter reduced to typewriting by a qualified

 8    transcriptionist; that said digital audio recording of

 9    said proceedings are a true and accurate record to the

10    best of my knowledge, skills, and ability; that I am

11    neither counsel for, related to, nor employed by any

12    of the parties to the action in which this was taken;

13    and, further, that I am not a relative or employee of

14    any counsel or attorney employed by the parties

15    hereto, nor financially or otherwise interested in the

16    outcome of this action.

17                                      CHARLES OLSON

18                                Notary Public in and for the

19                                Commonwealth of Massachusetts

20

21

22
```

Page 261

1          CERTIFICATE OF TRANSCRIBER

2          I, AUDREY FRANKLIN, do hereby certify that

3   this transcript was prepared from the digital audio

4   recording of the foregoing proceeding, that said

5   transcript is a true and accurate record of the

6   proceedings to the best of my knowledge, skills, and

7   ability; that I am neither counsel for, related to,

8   nor employed by any of the parties to the action in

9   which this was taken; and, further, that I am not a

10  relative or employee of any counsel or attorney

11  employed by the parties hereto, nor financially or

12  otherwise interested in the outcome of this action.

13

14                                       *Audrey Franklin*

15                                       AUDREY FRANKLIN